L. J. CAMPBELL *v.* George M. GEHEB et ux

74-330                                          523 S.W. 2d 185

Opinion delivered June 2, 1975

*Dale W. Finley,* for appellant.

*Garner, Garner & Cloar,* for appellees.

FRANK HOLT, Justice. Appellant brought this action to

set aside a quitclaim deed from appellee George M. Geheb to his appellee wife, Cecil. Appellant alleged that the transaction was a fraudulent conveyance and was done for the purpose of delaying and hindering the appellant in the collection of a judgment against George. The chancellor held that the property is Cecil's homestead and, therefore, is not subject to the claim of appellant as a judgment creditor. For reversal, appellant contends the chancellor erred in determining the homestead interest and refusing to set aside the conveyance. We cannot agree.

Appellant acknowledges that Cecil properly claims the property as her homestead. Appellant argues, however, that George has shown no homestead interest in the property. Cecil lives in Ft. Smith on the property in question and George lives in Newton County where she lives with him occasionally. Therefore, his quitclaim deed to Cecil should be set aside as a fraudulent conveyance and appellant should be permitted to execute upon and sell George's interest subject to Cecil's homestead rights.

Ark. Stat. Ann. § 30-210 (Repl. 1962) provides that when the husband neglects or refuses to claim his homestead rights, his wife may intervene and set it up. The stipulation, as abstracted by appellant, is as follows:

> Prior to the taking of any testimony, counsel for the parties made statements and stipulations to the effect that the judgment in 1968 was admitted; that Cecil Geheb was the sole owner of the realty prior to her marriage; that a tenancy by the entirety was created by the use of a third party; that the judgment was not of record in Sebastian County until 1973; and that the realty was conveyed in 1971 by Mr. Geheb to Mrs. Geheb without monetary consideration.

> In addition, the realty was the homestead of Cecil Geheb who obtained title from her father. All subsequent indebtedness had been paid by Mrs. Geheb. The reconveyance by Mr. Geheb was made three days after the last payment on the mortgage.

In construing the homestead exemption, we have recognized that a conveyance destroys the homestead claim. See *Drennen* v. *Wheatley*, 210 Ark. 222, 195 S.W.2d 43 (1946), where we quoted as follows:

> The general rule is that, in the absence of specific constitutional or statutory authority therefor, there is no right on the part of a debtor to claim exempt funds arising from the voluntary sale of his homestead. 'In the absence of statutory provisions to the contrary, the voluntary sale of homestead property is held in a majority of jurisdictions, to be a complete extinguishment of the homestead right; and consequently the proceeds of such sale, until invested in other exempt property, may be subjected to the claims of creditors.'

See also *Obenshain* v. *Obenshain*, 252 Ark. 701, 480 S.W.2d 567 (1972). Thus from the foregoing discussion, it would appear that any homestead right that Cecil Geheb may have had at the time of the conveyance to her husband was relinquished by that conveyance.

Furthermore, a wife can only claim one homestead under Ark. Const. Art. 9, §3. This was recognized in *Grimes* v. *Luster*, 73 Ark. 266, 84 S.W. 223 (1904). In that case Hugh Grimes died leaving a widow. He had a homestead at Newport. The widow moved to Batesville, married and acquired a homestead with her second husband. She died leaving four children all of whom were adults except Harry Grimes. The three older children conveyed their interest in the Batesville property to Mark Luster. Harry brought the action to recover the rents and profits on the theory that he as a minor was entitled to claim a homestead right in the Batesville property. In holding that a minor could not acquire two homestead rights, we there stated:

> The beneficence of these provisions extend in favor of the children to the homestead of either parent. So long as the family circle is not broken by the death of either parent, there can be but one homestead; and it matters not whether that is the homestead of the father or mother. *Thompson* v. *King*, 54 Ark. 9; *Wilmoth* v.

*Gossett,* 71 Ark. 594. And, as heretofore shown, successive homestead rights may be inherited by minors in cases like this one at bar where the widow acquires a homestead during her widowhood in her own right, but both cannot be enjoyed at one and the same time. Such an enjoyment would present an anomaly, and one not to be tolerated because contrary to the spirit and letter of the homestead exemption. . . .

In *Hollis* v. *State,* 59 Ark. 211, 27 S.W. 73 (1894), in discussing the nature of the homestead right, we said:

In the case of *Harbison* v. *Vaughan,* 42 Ark. 539, this court said that the protection of the family from dependence and want is the object of all homestead laws; that apart from his family, the debtor is entitled to no special consideration. As the protection of the family is the object of the homestead law, so it has been held that desertion of the family by the husband, still leaving the family occupying the homestead, is not an abandonment of the homestead.

In *Rosenberg* v. *Jett,* 72 F. 90 (1894) Williams, District Judge, commented on the matter as follows:

I am clearly of the opinion that during coverture, and while the husband and wife are not separated, but are living together as husband and wife, there can be no such thing as a separate homestead of the wife, separate and apart from her husband, that the domicile of the husband is the domicile of the wife, and, wherever he may erect a homestead, it is, in the contemplation of the law, the homestead of the husband and wife. . . .

See also *Bruce* v. *Bruce,* 176 Ark. 442, 3 S.W.2d 6 (1928).

We are firmly convinced that when Cecil Geheb conveyed to a third party for the purpose of creating an estate of the entirety, she also conveyed any rights of homestead that she may have had prior thereto. Furthermore, any rights of homestead that she could claim thereafter would have to arise out of the marriage relationship to George Geheb. It

necessarily follows that when appellant stipulated that Cecil Geheb had a homestead in the property, they necessarily stipulated that that homestead was one acquired during the marriage which would exempt the property from sale under the homestead laws from the creditors of either the husband or the wife. In view of Ark. Stat. Ann. § 30-210, *supra*, it matters not that George Geheb did not claim the homestead exemption.

Affirmed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I disagree with the holding in this case, because I think it is based upon at least two erroneous premises. In the first place there is no evidence or contention that George Geheb ever had a homestead right in the property. Secondly, there is no indication that Cecil Geheb has ever asserted any homestead right on behalf of George Geheb.

The answer filed by Cecil and George Geheb was a general denial and made no mention of anyone's homestead. The first mention of homestead was in a stipulation made at the trial prior to the taking of any testimony. The stipulation was that the realty was the homestead of *Cecil* Geheb. She testified that at the time pertinent to this case she lived in Ft. Smith and George Geheb lived in Newton county. She lives with her husband in Newton county on weekends when she gets a chance. The property was owned by Cecil Geheb prior to her marriage to George Geheb. She has lived on it since she and her daddy bought it. She moved on this property about 22 years ago and her daddy and mother moved in with her. She intends to claim the property as *her* homestead. Her mother, her brother and her brother's wife live there, too. She stays there part of the time and part of the time in Newton county. The chancellor found that she had always claimed the property as her homestead and that it was still the homestead of Cecil Geheb. He did not find nor was there any evidence to indicate that the property was or had been the homestead of George Geheb.

I do not agree that, under these circumstances, the wife can claim the homestead of the husband for the benefit of the husband when he fails to do so, even though she can do so for her own benefit and that of the family. He was and is a party and until this date, he has not asserted a claim that this property constitutes his homestead. All Cecil Geheb could do, assuming that the property constituted the homestead of George, is to claim the homestead for the benefit of herself and his family.

In *Hollis* v. *State*, 59 Ark. 211, 27 S.W. 73, we determined that when the husband abandoned the wife and children, the wife could claim the exemption of the homestead which they continued to occupy, saying that the wife could do this when the husband neglects or refuses to do so (because the object of the homestead exemption was to protect the debtor's family from dependence and want) but not for his own benefit apart from that of his family, citing *Harbison* v. *Vaughan*, 42 Ark. 539. But here, there is no evidence that George Geheb has done either. The mere fact that he has not claimed a homestead he never had is not evidence of either neglect or refusal.

It is quite clear that a woman, whether married or not, who is the head of a family may be entitled to a separate homestead in her own right. *Monroe* v. *Monroe*, 250 Ark. 434, 465 S.W. 2d 347. *Thompson* v. *King*, 54 Ark. 9, 14 S.W. 925. The land of a wife occupied as a home by her husband and family is her homestead, but upon her death, leaving minor children, they are entitled solely to the homestead right, to the exclusion of the husband. *Thompson* v. *King*, supra. No provision is made under our law for homestead rights of a surviving husband in his wife's property, because the wife cannot well leave a widow. *Thompson* v. *King*, supra. See also, *Grimes* v. *Luster*, 73 Ark. 266, 84 S.W. 223. It is true that in *White Sewing Machine Co.* v. *Wooster*, 66 Ark. 382, 50 S.W. 1000, we clearly recognized that a husband, who is head of a family can, if he has no other homestead, establish a homestead on his wife's property and claim his own right of homestead, thus established, to exempt the property from execution. The facts here are different and more nearly similar to those in *Thompson* v. *King*, supra. The distinguishing

features here are the failure of George Geheb to claim or occupy the property as his homestead, and the absence of evidence that he had no other homestead.

There must have been actual occupancy of the land as a residence by George Geheb in good faith, before it could be his homestead. *Hinton* v. *Willard,* 215 Ark. 204, 220 S.W. 2d 423; *Tillar* v. *Bass,* 57 Ark. 179, 21 S.W. 34; *Bank of Quitman* v. *Mahar,* 193 Ark. 1111, 104 S.W. 2d 800. *Chastain* v. *Arkansas Bank & Trust Co.,* 157 Ark. 423, 249 S.W. 1. There must be a "good faith" intention to impress the property occupied with the homestead character. See *Kulbreth* v. *Drew County Timber Co.,* 125 Ark. 291, 188 S.W. 810; *Gibbs* v. *Adams,* 76 Ark. 575, 89 S.W. 1008. The burden was upon the claimant to show the homestead right. *Gibbs* v. *Adams,* supra; *Bank of Quitman* v. *Mahar,* supra. Neither George nor Cecil Geheb met the burden of proving that the land was the homestead of George Geheb, or attempted to do so. As a matter of fact there is not one word of evidence to indicate that he occupied the land, or had any intention to impress it with a homestead character. To constitute a place a homestead, it must be a place of actual residence. *Tillar* v. *Bass,* supra. Neither the intention of the owner of land to occupy it as a homestead nor occasional occupancy is sufficient to impress it with the character of a homestead, if his actual home residence is elsewhere. *Bank of Quitman* v. *Mahar,* supra. An intention to occupy the land as a homestead in the future is not sufficient. *Chastain* v. *Arkansas Bank & Trust Co.,* supra. The burden of proving the required occupancy, or any other fact essential to the homestead exemption, is on the homestead claimant. *Chastain* v. *Arkansas Bank & Trust Co.,* supra.

We are not favored with the facts which caused the property to be Cecil Geheb's homestead. It was admitted that Geheb had no assets, other than the tenancy by the entirety, with which to pay the judgment. There was evidence that Cecil Geheb, without help from George, paid off a debt secured by mortgage on the property. Cecil Geheb testified that she did not live in Newton County and only went there a day or two at a time. She wanted her place for her mother and a brother. She stays there with them at least five days a week. She could well have been the "head of the family" and

entitled to assert her homestead in her own right. The burden was upon George Geheb to show that he was entitled to a homestead in his wife's property. He didn't.

I submit that the federal trial court decision in *Rosenberg v. Jett*, 72 F. 90 (1894) does not overrule our own cases. It should be ignored because it did no more than express a fleeting opinion. The portion quoted in the majority opinion is followed by these words:

> ...But it is unnecessary in this case to even pass upon that proposition or contention.

It is not supported by *Bruce v. Bruce*, 176 Ark. 442, 3 S.W. 2d 6, where the question was whether a wife had abandoned her right to claim homestead rights in her husband's property upon his death. We emphasized that the right she claimed was a *widow's* homestead, not a *wife's*. We also distinguished a previous decision by pointing out that Mrs. Bruce, at the time of her husband's death, owned and occupied another homestead. The only limitation involved is that one cannot enjoy two homesteads simultaneously. But Mr. Geheb is alive, and if he has a homestead, Mrs. Geheb is not enjoying it.

I further submit that none of the cases cited by the majority support the conclusion that a husband or wife, by creating a tenancy by the entirety abandons or waives any preexisting homestead right, as would be the case when the homestead is sold.

The decree should be reversed.