BRUCE *v.* BRUCE.

Opinion delivered February 20, 1928.

1. HOMESTEAD—RIGHT OF WIDOW.—In a suit by a widow to recover possession of lands occupied by her husband as homestead, her right to a homestead, if it accrued at all, accrued on the death of the husband.

2. HOMESTEAD — WIFE LIVING SEPARATE FROM HUSBAND.—Under Const., art. 9, § 6, providing for the vesting of a homestead, "if widow has no separate homestead in her own right," a widow who, at the time of her husband's death, was living separate from him on lands owned in her own right, was entitled to claim the homestead in his property on his death.

3. DOMICILE—WIFE LIVING APART FROM HUSBAND.—The domicile of a·wife follows that of her husband, though she is living separate and apart from him, and her legal status is governed by that of her husband.

4. HOMESTEAD—ABANDONMENT BY WIDOW.—Const., art. 9, § 6, providing for the vesting of the homestead in the husband's land, "if the widow has no separate homestead in her own right," the fact that a widow lived apart from her husband, whether because of her fault or his, *held* not to amount to an abandonment of the homestead, where proof showed that the husband, prior to his death, told her that she had a home there whenever she wanted to return as long as she lived, and she recognized the property as her homestead to which she could return.

Appeal from Polk Circuit Court; *B. E. Isbell,* Judge; affirmed.

*J. I. Alley,* for appellant.

*Minor Pipkin,* for appellee.

MEHAFFY, J. A. M. Bruce and Mrs. L. B. Bruce were married several years before the beginning of this suit, and lived together about five years. Prior to the marriage Mrs. Bruce owned in her own right a small tract of land on which she lived as her homestead before their marriage, and, after she and Mr. Bruce disagreed, she moved back to this place, and lived there until the death of A. M. Bruce, which occurred in October, 1926. Both parties had been married previously and had grown children, but there were no minor children, and no children as the result of this marriage.

Prior to the death of A. M. Bruce he had arranged with his grandson, J. A. Bruce, to move in with him and take care of the place and take care of him. This grandson moved in about a year before Mr. Bruce died.

Soon after the death of A. M. Bruce his widow administered on the estate, took charge of the personal property, and demanded possession of the lands. And when the possession of the lands was denied her, she brought this suit. She also sued for damages for the use of the land.

There is no evidence tending to show who was at fault or who caused the separation. Mrs. Bruce herself testified that they could not agree, but that she visited him after she had left him, and he had told her that she had a home there whenever she wanted to come back, but that she did not go back there to live until after his death.

The case was tried before the court sitting as a jury, and a judgment was rendered for plaintiff, L. B. Bruce, for the recovery and possession of the lands, describing them, and for $40.25 as damages for the unlawful detention of said lands up to the date of the judgment, and at the rate of $116 a year from date of judgment until defendant yielded possession of said lands. The defendant objected and saved his exceptions, and filed motion for a new trial, which was overruled, and the case is here on appeal.

There is practically no dispute about the facts, and, as stated by counsel for appellant, "The first question in this case that presents itself is, what is meant by the constitutional provision to the effect that said widow has no separate homestead in her own right?"

Article 9, § 6, of the Constitution of Arkansas reads as follows:

"If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life. Provided, if the owner leaves children, one

or more, said child or children shall share with said widow, and be entitled to half the rents and profits till each of them arrives at twenty-one years of age; each child's rights to cease at twenty-one years of age, and the shares to go to the younger children, and then all to go to the widow; and provided, said widow or children may reside on the homestead or not. And, in case of the death of the widow, all of said homestead shall be vested in the minor children of the testator or intestate.''

Appellant argues that the widow is not entitled to claim homestead out of the lands, because it is alleged she abandoned her husband and lived apart from him on a homestead belonging to her; that she owns and occupies a separate homestead in her own right, and that therefore she cannot claim one from her deceased husband. This is the only question in the case; the question whether she is entitled to a homestead in the lands of her deceased husband.

This is not claimed as the homestead of a wife or the head of a family, but is claimed as the widow's homestead, and, of course, her right to a widow's homestead, if it accrued at all, accrued upon the death of her husband.

This court said, in a case where a woman owned a separate homestead and lived on it several years before the death of her husband: ''The only question addressed to us for determination is whether the ownership of the lands in her own right, and upon which she and her husband lived for some years in their early married life, bars her claim of homestead in his lands, which they had occupied as a homestead for many years next preceding and up to his death.''

The difference between that case and this, of course, is that, in the present case, the wife was living on her own place at the time of the death of her husband, and in the case quoted from they had lived on her place but had moved back to his. But in each case she owned it in her own right, and we do not think that the facts in this case would preclude her from claiming a homestead in the lands of her deceased husband.

In the same case above quoted from, the court said:

"In construing the language of this section, this court, in *Thompson* v. *King,* 54 Ark. 11, 14 S. W. 926, said: 'The object of this section is to protect the home of the married and the family against seizure or sale, and no reason can be advanced why the land of the wife occupied as the home of the husband and his family should not be protected as well as the land of the husband should be when it is the homestead.' * * * The separate homestead referred to in the section of the Constitution just quoted is not the separate homestead of the wife, but of the widow, that is, the separate homestead of the widow, selected by her on her own lands after the death of her husband (for she is not the widow until then). * * * In other words, the section was construed to have reference to a separate homestead of the widow, established by her as a widow; that is, after, and not before, the death of her husband." *Wilmoth* v. *Gossett,* 71 Ark. 594, 76 S. W. 1073.

It will, of course, be conceded that, if Mrs. Bruce had lived with her husband on his homestead until he died, she would have been entitled to the homestead, notwithstanding she owned a tract on which she had formerly lived. To hold that the conduct of a man is such that his wife may live with him agreeably until he dies and be entitled to the homestead, and to contend that she would disentitle herself by leaving him, no matter what the treatment may have been, would be unreasonable. She becomes entitled to the widow's homestead upon his death, and not before. And the fact that they could not agree, and that this failure to agree made it necessary for her to live apart from him, should not and does not deprive her of her homestead rights under the Constitution.

This court said: "There is some testimony tending to show that plaintiff did not remain at home with that constancy due from a wife, but it is not sufficient to establish an abandonment of her husband's bed and board. Even if there had been such desertion, it did not amount

to a forfeiture of the widow's homestead right." *Brown*
v. *Brown,* 104 Ark. 313, 149 S. W. 330.

The question in this case, of course, is that she owned
and occupied another homestead, and in the above case
it is not contended that she owned another homestead.
But the owning of the other property is immaterial. As
we have said, her right to a widow's homestead accrued
when he died, and she had a right to select then. And
if her abandonment or desertion did not deprive her of
this right, certainly the fact that she lived on property
belonging to her would not affect it.

In construing the section of the Constitution with
reference to a widow's homestead, this court has said:

"It would seem that the language of this section of
the Constitution settles the question involved in this suit.
The appellee had never been divorced from her husband,
and she was unquestionably his widow. How then can
she be debarred of her homestead right, without reading
into the Constitution an exception or provision it does
not contain, to the effect that, if the wife abandon her
husband, and is guilty of immoral and unwifely conduct,
she shall forfeit her right thereby to the homestead? We
think such a construction unwarranted and untenable.
* * * In this State it is held that the domicile of the
wife follows that of the husband, and we understand this
to be the rule, and that the fact that she abandons her
husband, and lives apart from him in another State, will
not form an exception, nor cause her to forfeit her right
to the homestead. She is not a nonresident while her
husband is a resident. Her legal status, as to this, is
governed by that of the husband." *Duffy* v. *Harris,* 65
Ark. 251, 45 S. W. 545, 40 L. R. A. 750, 67 Am. St.
Rep. 925.

If the domicile of the wife follows that of the hus-
band, and there can be no dispute about this, then the
domicile of Mrs. Bruce, although living separate and
apart from him, was the domicile of her husband. And
her legal status is governed by that of her husband, and
immediately on his death she becomes entitled to her

homestead as a widow. If, after his death, she had remained on her own property, claiming that as her homestead, it might have been an abandonment of her homestead in his estate. But she did not do this. She administered on his estate and claimed a homestead as his widow. And what the Constitution means in speaking of a separate homestead in her own right is that, as a widow, and not as a wife, she occupies and claims this homestead, because it says "the said widow has no homestead in her own right." She was not entitled to any widow's homestead until his death, and if she immediately claimed homestead in her husband's property, she did not, as widow or after she was his widow, claim a homestead elsewhere.

There is no dispute about the facts in this case. Our Constitution provides: "If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall shall vest in her during her natural life," etc.

The only controversy at all is about the following portion of the section: "Has no separate homestead of her own right." Our court has construed this to mean a homestead of the widow, and not the homestead of the wife. She becomes entitled to it on his death, and unless, after his death, the widow selects some other homestead, she is entitled to this, and the fact that she had to live apart from the husband, whether it was her fault or his, does not amount to an abandonment of the homestead.

It has been said: "The law is not concerned about the precise locality of the family at any time, but it is concerned that, wherever they may be carried by convenience or chance or misfortune, there shall be a place to which they may return to find the shelter and security of a home. The homestead therefore is not to be likened to prison bounds, within which the family must always remain, but to a sanctuary to which they may always return. And an abandonment is accomplished, not by

going away without any intention of returning at any particular time in the future, but by going away with the definite intention never to return at all." *Foreman v. Meroney,* 62 Texas 723.

The undisputed proof is that the husband, prior to his death, told her that she had a home there whenever she wanted to return as long as she lived, and she recognized that as her right, as her homestead to which she could return.

The judgment of the circuit court is correct, and is therefore affirmed.